**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Appellant,<br><br>v.<br><br>Russell Brown,<br><br>          Appellee. | No. CV-21-02092-PHX-DWL<br><br>**ORDER** |

       This is an appeal by the Internal Revenue Service ("IRS") arising from the Chapter 13 bankruptcy proceeding of David and Deborah Vallejo ("Debtors"). During that proceeding, the IRS asserted that it was entitled to priority on its claim for just under $1,500 in Shared Responsibility Payments ("SRPs") that Debtors incurred due to their failure to maintain essential health insurance in 2016 and 2017. The basis for the SRPs was a controversial provision of the Patient Protection and Affordable Care Act ("ACA"), sometimes known as the individual mandate penalty, that has since been rescinded.

       The trustee of the bankruptcy estate, Russell Brown ("Brown"), objected to the IRS's priority claim and the bankruptcy court eventually ruled in Brown's favor, concluding in a carefully reasoned order that SRPs are not entitled to priority treatment. Along the way, the bankruptcy court noted some of the unusual features of the parties' dispute. (Doc. 11-1 at 1 ["The [dispute] brings to this Court a trio of this Court's favorite topics: (1) the [ACA], (2) a tax issue which is now just an historical footnote, and (3) an amount in controversy under $1,500. The background leading to this bankruptcy issues

jackpot can be summarized as follows . . . ."].)

Whether SRPs are entitled to priority treatment is a difficult question that has generated an array of conflicting decisions by bankruptcy, district, and circuit courts across the country. Acknowledging the closeness of the question, the Court respectfully disagrees with one portion of the bankruptcy court's analysis and thus reverses.

**BACKGROUND ON PRIORITY UNDER THE BANKRUPTCY CODE**

Under the Bankruptcy Code, certain categories of "expenses and claims have priority." 11 U.S.C. § 507(a). Two such recognized categories of priority claims are, in shorthand, (1) excise taxes on transactions, as set forth in § 507(a)(8)(E), and (2) taxes on or measured by income, as set forth in § 507(a)(8)(A).

As the Supreme Court has recognized, because priorities deviate from the "equal distribution objective underlying the Bankruptcy Code," they "must be tightly construed." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006). Additionally, "the trend of amendments . . . has been to erode the preferred status of taxes." *In re Lorber Indus. of Cal., Inc.* ("*Lorber I*"), 675 F.2d 1062, 1068 (9th Cir. 1982).

**BACKGROUND**

I. Factual Background And Bankruptcy Proceedings

The facts here are simple, straightforward, and uncontroverted.

During the 2016 and 2017 tax years, Debtors did not maintain the minimum essential health insurance required under the ACA and were therefore required to make an SRP pursuant to 26 U.S.C. § 5000A(b) (2017). (Doc. 11-1 at 119-20.)[1]

On February 11, 2020, Debtors filed a Chapter 13 voluntary petition for bankruptcy without having made their SRP payments. (*Id.* at 23-106.)

On February 24, 2020, the IRS timely filed a proof of claim for unsecured excise and income taxes totaling $5,071.79. (*Id.* at 107-10 ["Claim 4-1"].)

---

[1] As the bankruptcy court noted, "[w]hile this tax issue was a live controversy in 2017 and 2018, it was mooted by subsequent legislation. Effective January 1, 2019 the penalty in § 5000(A) was reduced to $0 pursuant to the Tax Cuts and Jobs Act of 2017. Here, Debtors' SRP debts were from 2017 and 2018, when the SRP was still in effect." (Doc. 11-1 at 12.)

On January 8, 2021, the IRS filed an amended proof of claim reducing the income tax to $0 and the unsecured excise tax to $1,540.59. (*Id.* at 111-14 ["Claim 4-2"].)

On February 4, 2021, the IRS filed another amended proof of claim, this time asserting unsecured priority claims totaling $1,451.59. (*Id.* at 115-18 ["Claim 4-3"].) The income tax remained at $0. (*Id.* at 118.) However, the IRS altered the kind of tax for which it asserted claims, from claims for an excise tax to "EXCISE-INC" claims. (*Compare id.* at 114 *with id.* at 118.) The operative proof of claim lists two separate "EXCISE-INC" claims, one assessed in 2017 and another in 2018.[2] (*Id.* at 118.)

On May 17, 2021, Brown, as trustee, objected to the claim under 11 U.S.C. §§ 502(a) and 1302(b) and Federal Rule of Bankruptcy Procedure 3007. (*Id.* at 119-20.) Brown argued that the SRP "is not a tax" or, even if it were, "the SRP is not an **excise** tax under 11 U.S.C. § 507(a)(8)(E) and does not fit any other category under § 507(a)(8)" that would result in priority status. (*Id.*)

On August 20, 2021, the IRS filed its opposition to the objection. (*Id.* at 122.) The IRS argued that the Supreme Court had already determined that the SRP is a tax (not a penalty) in *National Federation of Independent Business v. Sebelius* ("*NFIB*"), 567 U.S. 519 (2012). (*Id.* at 122-23.) Accordingly, the IRS argued that the SRP "must necessarily fall within one of the enumerated types of tax entitled to priority set forth in 11 U.S.C. § 507(a)(8)." (*Id.* at 123.) The IRS concluded that the SRP is either an excise tax or a tax on or measured by income, both of which would be entitled to priority status. (*Id.* at 123, 127-33.)

II.     The Bankruptcy Court's Decision

In November 2021, in a written order issued following oral argument, the bankruptcy court sustained Brown's objection. (*Id.* at 10-21.) The court addressed the following issues: (1) whether SRPs qualify as penalties or taxes; (2) even if taxes, whether

---

[2] During the underlying proceedings, the IRS asserted that "EXCISE-INC" is a notation by the IRS intended to communicate that the line item may qualify either as an excise tax or as a tax on or measured by income. (Doc. 11-1 at 262-63 ["[T]he way that tax is now coded is as EXCISE-INC which is excise-income because it could be qualified as either one of those taxes."].)

- 3 -

SRPs further qualify as excise taxes on "transactions" such that they trigger priority status under § 507(a)(8)(E); and (3) alternatively, whether SRPs qualify as taxes on or measured by income such that they trigger priority status under § 507(a)(8)(A). (*Id.* at 13.)

### A.   **Penalty Or Tax**

The bankruptcy court acknowledged that although the ACA purports to characterize the SRP as a penalty, the Supreme Court in *NFIB* "determined the SRP was a tax." (*Id.* at 14.) The bankruptcy court further noted that, under tests set out in *In re Lorber Industries of California* ("*Lorber II*"), 564 F.3d 1098 (9th Cir. 2009), and *In re George*, 361 F.3d 1157 (9th Cir. 2004), courts in the Ninth Circuit consider certain factors when deciding whether an exaction is a penalty or tax. (*Id.*) Applying those factors, the bankruptcy court concluded that the SRP is an excise tax because the SRP is a "pecuniary burden," "Congress authorized the SRP," "the purpose of the SRP is to provide revenue" in addition to offsetting medical expenses of uninsured individuals, the SRP was constitutionally enacted under Congress's taxing power, and "no other hypothesized private creditor could make a claim for the SRP, as the SRP is purely a function of federal statute." (*Id.* at 14-15.)

### B.   **Excise Tax Under § 507(a)(8)(E)**

The bankruptcy court next observed that "[w]hile the SRP is properly classified as an excise tax under the *Lorber II* and *George* tests, it does not necessarily mean the SRP is an excise tax within the meaning of § 507(a)(8) of the Bankruptcy Code." (*Id.* at 15.) Accordingly, the court focused on the language of § 507(a)(8)(E)(i)-(ii), which affords priority status only to an excise tax on a "transaction." (*Id.* at 15-19.) The bankruptcy court concluded that the failure to obtain health insurance as required by the ACA is not a "transaction" for purposes of § 507(a)(8)(E), reasoning that the Ninth Circuit's holding in *George*—that "the failure to make the transaction of purchasing workers' compensation insurance is the absence of a transaction and, therefore, not an excise tax for purposes of federal bankruptcy law"—similarly applied to Debtors' failure to obtain required health insurance. (*Id.*, internal quotation marks omitted.)

In the course of this analysis, the bankruptcy court distinguished the three cases on which the IRS primarily sought to rely: *Matter of Cousins*, 601 B.R. 609 (Bankr. E.D. La. 2019), *In re Nat'l Steel Corp.*, 321 B.R. 901 (Bankr. N.D. Ill. 2005), and *In re DeRoche*, 287 F.3d 751 (9th Cir. 2002). (*Id.* at 16-19.) For example, *Cousins* held that a taxpayer exercises his or her right to remain uninsured, thus making the SRP "a tax imposed, 'upon the exercise of a right or privilege,' making it an excise tax.'" (*Id.* at 16 [quoting *Cousins*, 601 B.R. at 620].) The bankruptcy court found this rationale unpersuasive because *Cousins* "was reluctant to even name the SRP an excise tax" and did not identify how the exercise of a right fits within the "'transactional' requirement of § 507(a)(8)(E)." (*Id.* at 16-17.) Next, the bankruptcy court distinguished *National Steel Corp.*, which focused on a franchise tax required by Texas for the 'privilege to *transact* business in the state,' from the facts here, reasoning that the "failure to obtain health insurance" is the "absence of a transaction." (*Id.* at 17, citation omitted.) The bankruptcy court added: "This Court views a 'transaction' as requiring an active excise, i.e. the purchase of insurance, not a decision to not buy insurance. Here, the Debtors' decision to not purchase health insurance was a passive choice, a 'nonexcise' if you will." (*Id.*) Finally, the bankruptcy court noted that *DeRoche* "considered whether an employer's obligation to reimburse the Arizona Workers' Compensation 'Special Fund' constituted an excise tax under § 507(a)(8)(E)." (*Id.*) Because "the 9th Circuit identified six events that led to characterizing the tax as an excise tax on a 'transaction,'" and thus the transaction was "not simply the employer's failure to obtain workers' compensation insurance but events subsequent to that passive choice," the bankruptcy court held that Debtors' conduct was distinguishable and was instead more like the conduct at issue in *George*. (*Id.* at 17-18.) Finally, the bankruptcy court identified *In re Jones*, 610 B.R. 663 (Bankr. D. Mont. 2019), as another decision supporting the conclusion that an SRP simply arises from inaction and thus does not involve a "transaction" as required for priority under § 507(a)(8)(E). (*Id.* at 18-19.)

…

…

- 5 -

  C. **Tax On Or Measured By Income Under § 507(a)(8)(A)**

After noting that the "issue has not been resolved by the 9th Circuit," the bankruptcy court concluded that the SRP is not "an income tax subject to priority status under § 507(a)(8)(A)." (*Id.* at 19-21.) The bankruptcy court found unpersuasive the decision in *In re Szczyporski*, 531 F. Supp. 934, 943 (E.D. Pa. 2021), which held that the SRP "was entitled to priority treatment as an income tax" because "the SRP is first dependent on a taxpayer's income, then determined by such familiar factors as taxable income, number of dependents, and joint filing status." (*Id.* at 20.) Instead, the court relied on *In re Juntoff*, 2021 WL 1522206 (Bankr. N.D. Ohio 2021), which reasoned that "analyzing a taxpayer's income is not always necessary to determine the SRP to be paid by that individual, and thus cannot be called an income tax under § 507(a)(8)(A)." (*Id.*) The bankruptcy court also noted that the structure of the tax code, which lists the SRP under the "Miscellaneous Excise Taxes" category (as opposed to "Income Taxes"), supports this interpretation. (*Id.* at 21.)

**STANDARD OF REVIEW**

The Court has jurisdiction to hear the IRS's appeal under 28 U.S.C. § 158(a)(1). The Court reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *In re Thorpe Insulation Co.*, 677 F.3d 869, 879 (9th Cir. 2012). Here, no significant facts are in dispute. (Doc. 11 at 3; *accord* Doc. 12 at 3 [noting one immaterial discrepancy].)

**ANALYSIS**

I. <u>Penalty Or Tax</u>

As noted, the bankruptcy court agreed with the IRS on one of the threshold issues in this case—whether the SRP is properly characterized as a penalty or tax—even though it eventually ruled against the IRS on the priority issue. The IRS argues that because Brown did not file a cross-appeal to challenge this aspect of the bankruptcy court's ruling, he is bound by it on appeal. (Doc. 11 at 7 n.3.) Brown disagrees and urges the Court to find that the SRP is properly characterized as a penalty, which would serve as an alternative

basis for affirmance. (Doc. 12 at 2 n.1, 5-9.)

On the one hand, the Court agrees with Brown that the penalty/tax characterization issue has not been waived or forfeited. As the Supreme Court has explained, a party who has not filed a cross-appeal may not "attack" the underlying judgment in a way that would "enlarg[e] his own rights thereunder or [lessen] the rights of his adversary." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015). Nevertheless, "an appellee who does not take a cross-appeal may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court." *Id.* (citation omitted). Here, the underlying judgment concludes that the IRS's claim is not entitled to priority. Brown's theory that the SRP is a penalty and not a tax would produce the same result. Therefore, Brown's rights are not enlarged by advancing this argument, nor are the IRS's rights curtailed.[3]

On the other hand, Brown's argument fails on the merits. The Supreme Court has explained that "a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government," whereas a penalty is "an exaction imposed by statute as punishment for an unlawful act." *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996). The Court agrees with the bankruptcy court that the SRP is a tax.

In *NFIB*, the Supreme Court considered whether the individual mandate represented an unconstitutional exercise of Congress's power. 567 U.S. at 546-75. As relevant here, the Court held that the ACA's "requirement that certain individuals pay a financial penalty for not obtaining health insurance may reasonably be characterized as a tax" and was

---

[3] The IRS also suggests that *In re Alexander*, 472 B.R. 815 (B.A.P. 9th Cir. 2012), requires the filing of a cross-appeal in this circumstance. (Doc. 13 at 1 n.2.) This argument is unavailing. Decisions of the BAP are not binding on this Court. *Vitalich v. Bank of N.Y. Mellon*, 569 B.R. 502, 507 (N.D. Cal. 2016) ("[D]ecisions of the BAP are not binding on this Court."). Instead, this Court must follow the decisions of the Supreme Court (like *Jennings*) and the Ninth Circuit, which do not require a cross-appeal. *See also Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1041 (9th Cir. 1992) ("Generally, a cross-appeal is required to support modification of the judgment, but . . . arguments that support the judgment as entered can be made without a cross-appeal.") (citations and internal quotation marks omitted).

therefore a constitutional exercise of Congress's taxing power. *Id.* at 574. The Court reasoned that Congress's label of the payment as a "penalty" was not dispositive and instead employed a functional analysis. *Id.* at 564-65. In comparing the SRP to a penalty, it found three critical distinctions: (1) the SRP does not impose an "exceedingly heavy burden" on the taxpayer; (2) there is no "scienter requirement," like knowledge; and (3) the IRS, a revenue collecting agency, collects the SRP, not an agency responsible for punishment. *Id.* at 565-67. The Court also noted that non-payment of an SRP does not subject the individual to the most severe sanctions (criminal punishment) or other "negative legal consequences." *Id.* at 567-68. *See also id.* at 572 ("[I]t is abundantly clear the Constitution does not guarantee that individuals may avoid taxation through inactivity.").

It is, of course, true that *NFIB* only reached whether the SRP was constitutionally enacted under Congress's taxing power and left open the possibility that the SRP might be categorized differently depending on the context. 567 U.S. at 543-47 (discussing that the SRP is not considered a tax for purposes of the Anti-Injunction Act). But the Court "cannot ignore that the Supreme Court already has explained that a penalty is 'punishment for an unlawful act or omission' and that not purchasing insurance in compliance with the individual mandate did not constitute an unlawful act or omission." *Juntoff*, 636 B.R. at 868 (citation omitted). Put simply, the SRP is "a pecuniary burden laid upon individuals or property for the purpose of supporting the Government"—*i.e.*, a tax. *NFIB*, 567 U.S. at 567 ("Although the payment will raise considerable revenue, it is plainly designed to expand health insurance coverage. But taxes that seek to influence conduct are nothing new."). *See also United States v. Alicea*, 58 F.4th 155, 164 (4th Cir. 2023) ("[W]e agree that a functional analysis of the SRP shows that it operates as a tax, not a penalty. We therefore do not need to decide whether we are technically bound by the Supreme Court's functional analysis of the SRP [in *NFIB*]."); *In re Szczyporski*, 34 F.4th 179, 186 (3rd Cir. 2022) ("The Supreme Court's *Sebelius* analysis is not dispositive in the bankruptcy context, but we find it persuasive. Based on the functional examination of the [SRP's] actual effects and operation, we conclude that the payment is a tax for bankruptcy purposes.").

II. Excise Tax Under § 507(a)(8)(E)

The bankruptcy court held that although the SRP may generally qualify as an excise tax, it does not qualify as the sort of excise tax that is entitled to priority treatment under § 507(a)(8)(E) because it is not tied to a "transaction." (Doc. 11-1 at 16-19.)

The IRS argues that the SRP is an excise tax within the meaning of § 507(a)(8)(E) because the requisite transaction "occurs when the taxpayer becomes liable for its payment." (Doc. 11 at 10.) The IRS argues that the bankruptcy court's reliance on *Jones* was misplaced because the cases on which *Jones* relied "declined to find the [SRP] was an excise tax altogether" and "[m]any of these cases referenced by *Jones* were also vacated or dismissed on appeal." (*Id.*) The IRS also cites *In re Groetken*, 843 F.2d 1007 (7th Cir. 1988), and *In re Rizzo*, 741 F.3d 703 (6th Cir. 2014), for the proposition that the term "transaction" should be read broadly enough to encompass an excise tax "imposed on the exercise of a right or privilege, including the right not to choose to purchase healthcare." (*Id.* at 11.) The IRS also argues that *DeRoche*, a Ninth Circuit case, permits taxes on "inaction" to be classified as excise taxes. (*Id.*) Finally, the IRS argues that the most natural reading of § 507(a)(8)(E) is that "the phrase 'on a transaction' serves to establish the three-year window within which a tax claim receives priority treatment, not to limit which types of taxes receive priority." (*Id.* at 12, citing *Quiroz v. Mich. Dep't of Treasury*, 472 B.R. 434, 440-41 (E.D. Mich. 2012).)

In response, Brown contends that the SRP fails the functional test for an excise tax because the "government's claim for the penalty under the ACA is not applicable to similarly situated entities as there is no business and the penalty comes into play only for those individuals who fail to buy private health insurance." (Doc. 12 at 10.) Brown also argues that the SRP "benefits the private health insurance market," which fails the *George* and *Lorber II* inquiries. (*Id.* at 11.) Brown places heavy reliance on *George* and *Jones*, arguing that both support the conclusion that because there is no "transaction" for purposes of the SRP (because failing to purchase health insurance is "inaction"), the SRP is not entitled to priority. (*Id.* at 11-12.) Finally, Brown cites the Fifth Circuit's recent

unpublished decision in *Matter of Chesteen*, 799 F. App'x 236 (5th Cir. 2020), which found that the SRP is a tax on inactivity and thus cannot be considered an excise tax "on a transaction." (*Id.* at 12-13.)

In reply, the IRS reiterates that the SRP meets the test for an excise tax under *George* and *Lorber II* and argues that "transaction" does not always require a "discrete, readily identifiable transaction" and is instead a "temporal limit." (Doc. 13 at 6-8, quoting *Nat'l Steel Corp.*, 321 B.R. at 912.)

The bankruptcy court correctly determined that the SRP qualifies as an excise tax under Ninth Circuit law. "Federal courts apply a 'functional examination' to the exaction, regardless of how it is labeled, to determine whether it is a tax, a penalty, a debt, or something else." *George*, 361 F.3d at 1160. *See also Lorber II*, 564 F.3d at 1101 ("The Bankruptcy Code does not define 'excise tax,' and federal courts do not rely on state law labels to determine which obligations qualify. Instead, courts engage in a functional examination to determine if a government exaction is an excise tax."). In the Ninth Circuit, courts consider certain factors when evaluating whether an exaction qualifies as an excise tax—specifically, whether the exaction "is: (a) an involuntary pecuniary burden, regardless of name, laid upon individual or property; (b) imposed by or under the authority of the legislature; (c) for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; and (d) under the police or taxing power of the state." *Lorber II*, 564 F.3d at 1101. Another relevant factor is whether "a creditor similarly situated to the government can be hypothesized under the relevant statute." *Id.* (citing *George*, 361 F.3d a 1162).[4]

---

[4] Brown argues that two additional considerations bear on whether an exaction is an excise tax: "[t]hat [the] pecuniary obligation be universally applicable to similarly situated entities; and that according priority treatment to a government claim not disadvantage private creditors with like claims." (Doc. 12 at 10, citing *In re Camilli*, 94 F.3d 1330 (9th Cir. 1996).) It's unclear whether those considerations are incorporated into the Ninth Circuit's standard excise-tax analysis. *Camilli*, 94 F.3d at 1334 ("Because the obligation in this case meets the four additional requirements set forth by the Sixth Circuit in *Suburban I*, as well as the criteria of *Lorber*, there is no need to decide whether the *Suburban I* requirements must be met in all cases."). *See also Lorber II*, 564 F.3d at 1101 ("*In re Camilli* favorably cited the Sixth Circuit's analysis in *Suburban I and II*."); *id.* at 1101-02 (noting that *George* added a "fifth element"); *George*, 361 F.3d at 1162 ("*Camilli* distinguished *Lorber* because of some unique, non-universal characteristics of the Arizona

- 10 -

These considerations compel the conclusion that the SRP is an excise tax. First, the SRP is an involuntary obligation. *George* limits "involuntariness to 'inherent characteristics of the charges,' not the 'motivation' of the payer or the 'practical and economic factors which constrained' the payer." 361 F.3d at 1161 (citations omitted). When it still existed, 26 U.S.C. § 5000A(b)(1) mandated payment of the SRP if an individual did not purchase the requisite health insurance coverage. Second, Congress imposed the SRP under its taxing power. *NFIB*, 567 U.S. at 570. Third, collecting the SRP "produces at least some revenue for the Government." *Id.* at 564. Fourth, *NFIB* concluded that Congress acted constitutionally when it enacted the SRP. *Id.* at 570. Finally, neither party, nor the Court, can hypothesize a creditor who would be similarly situated to impose this type of exaction on taxpayers, given that the SRP is a creature of federal statute. *Cf. Lorber II*, 564 F.3d at 1102 ("Under the Arizona workers' compensation framework, there are no private creditors similarly situated to the government. . . . [The Arizona fund] carries its statutorily-imposed burden alone. No private entity competes with the [Arizona fund] to pay 'insurance' claims for which no insurance has been bought.") (citations and internal quotation marks omitted). *See also In re Szczyporski*, 34 F.4th at 186-87 (applying the *Lorber II* factors to conclude the SRP is a tax). Brown's argument that the *Lorber II* factors should only be applied to businesses is unavailing.

Next, the Court considers whether the SRP is the type of excise tax that Congress intended to attain priority status. This analysis begins with the relevant statutory language. *United States v. Hanousek*, 176 F.3d 1116, 1120 (9th Cir. 1999) ("Statutory interpretation begins with the plain language of the statute."). Under 11 U.S.C. § 507(a)(8)(E), one of

---

workers' compensation system."). Nevertheless, even if those elements are included, the SRP qualifies as an excise tax. First, any similarly situated taxpayer who did not obtain health insurance (and was not subject to any exemption) was required to pay the SRP. Second, there is no similarly situated private creditor. The imposition of the SRP does not compete with any private creditor for reimbursement. *Cf. Camilli*, 94 F.3d at 1333-34 (where unemployment insurance premiums paid to Ohio were a "universal obligation" and there was no "similar obligations to a private carrier," the premiums were correctly classified as a tax, in part because "according priority treatment to those claims did not disadvantage any private creditors with similar claims").

- 11 -

the categories of expenses and claims that has priority is:

> [U]nsecured claims of governmental units, only to the extent that such claims are for . . . an excise tax on—
>
> > (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
> >
> > (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition. . . .

In *George*, the Ninth Circuit analyzed the interplay of the phrases "excise tax" and "transaction" within subsection (E). 361 F.3d at 1163. The facts of *George* are straightforward. The Georges filed for bankruptcy and were eventually found liable for a $116,000 debt arising from their failure to "cover an employee injury by purchasing workers' compensation insurance or meeting state requirements for self insurance." *Id.* at 1159. California's Uninsured Employer's Fund filed a lien against the Georges' real property for the balance, but the bankruptcy court discharged the lien because it was not an "excise tax" under § 507(a)(8)(E). *Id.* The Ninth Circuit agreed, concluding that the lien was not an excise tax for purposes of § 507(a)(8)(E) for two reasons. First, the court emphasized that the state statute that authorized the agency's claim (which characterized the claim as a "liquidated claim for damages") allowed recovery for "cumulative injury" from two or more employers, thus potentially creating unequal footing between the government and a private creditor's claim. *Id.* at 1162-63. Second, the court held that the Fund's "claim against the Georges was not an exaction 'on a transaction' the Georges made." *Id.* at 1163. On this point, the court elaborated: "Their only relevant transaction was hiring the employee who got injured, but hiring does not occasion a Trust Fund claim in California, and neither does an employee injury. What occasions such a claim is the failure to make the transaction of purchasing workers' compensation insurance (or applying for self-insured status). It is hard to squeeze the absence of a transaction, which triggers California Trust Fund liability, into the bankruptcy statute requirement of 'a transaction occurring during' the three years preceding bankruptcy." *Id.*

- 12 -

The Court agrees with the bankruptcy court that, in light of *George*, the SRP is not the type of excise tax that falls within 11 U.S.C. § 507(a)(8)(E). The liability-inducing event for an SRP is the failure to maintain "minimum essential coverage." 26 U.S.C. § 5000A(b)(1) (2017) ("If a taxpayer who is an applicable individual . . . fails to meet the requirement of subsection (a) [minimum essential coverage] for one or more months, then . . . there is hereby imposed on the taxpayer a penalty with respect to such failures in the amount determined under subsection (c)."). This is nearly identical to the liability-inducing event at issue in *George*—*i.e.*, "the *failure* to make the transaction of purchasing workers' compensation insurance (or applying for self-insured status)"—and it is therefore equally "hard to squeeze the absence of a transaction, which triggers [ACA] liability, into the bankruptcy statute's requirement of 'a transaction occurring during the three years' preceding bankruptcy." *George*, 361 F.3d at 1163. The IRS is correct that subsection E has a timing element to it, but the Ninth Circuit has interpreted the requirement of a "transaction" to be a substantive limitation. *Id.* at 1163-64. *See also Szczyporski*, 34 F.4th at 189 n.5 ("[T]he payment is not entitled to priority under 11 U.S.C. § 507(a)(8)(E) as 'an excise tax . . . on a transaction' because the failure to purchase healthcare is not a 'transaction.'") (citation omitted).[5]

*In re DeRoche*, 287 F.3d 751 (9th Cir. 2002), on which the IRS relies, does not compel a different conclusion. In *Camilli*, which was decided six years before *DeRoche*, the Ninth Circuit held that an Arizona employer's obligation to reimburse the "Special Fund" administered by the Industrial Commission of Arizona ("ICA") was an excise tax entitled to priority under the Bankruptcy Code. 94 F.3d at 1334. Although the facts of *Camilli* are similar to those of *George*, the underlying state statutes that gave rise to the

---

[5] During oral argument, the IRS sought to distinguish *George* on the ground that the discussion of the "transaction" requirement in that case was unnecessary to the ultimate outcome and therefore dicta. This argument fails because it disregards how the Ninth Circuit has defined the law of the circuit. *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) ("Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense. . . . In other words, well-reasoned dicta is the law of the circuit . . . .") (citations, brackets, and internal quotation marks omitted).

- 13 -

exactions differ in ways that are critical to the analysis here. In *Camilli*, the debtor failed to secure worker's compensation insurance for her employees. *Id.* at 1332. After one of the employees was injured, the ICA stepped in to pay the injured employee's claim, which payments "act[ed] as a judgment against the employer" under Arizona law. *Id.* at 1332-33. During Camilli's bankruptcy, the ICA sought priority for its claim as an excise tax under 11 U.S.C. § 507(a)(8)(E). *Id.* The dispute mainly turned on whether Camilli made a "voluntary" decision not to purchase worker's compensation insurance. *Id.* at 1333. But the court reasoned that this was not "an accurate description of the legal effect of Camilli's failure to procure workers' compensation insurance in Arizona, even if that failure could be considered to be a 'voluntary' act." *Id.* "The source of Camilli's obligation to repay the workers' compensation benefits in this case was not her failure to obtain insurance, but the statutorily-created obligation to reimburse the Special Fund once the Fund paid benefits to an uninsured employee" and was "wholly beyond the control of the debtor." *Id.* Therefore, after considering other relevant factors, the Court held that the reimbursement obligation was an excise tax entitled to priority. *Id.* at 1334.

In contrast, *DeRoche* concerned where the "transaction" point was for an Arizona employer who did not carry worker's compensation insurance, which required the ICA to step in and pay the claim of an injured employee. 287 F.3d at 753. There, the court specifically rejected the ICA's argument (which the IRS effectively makes in this case)[6] that the requisite "transaction" occurs upon the assessment of the tax: "First, it would be odd to construe the word 'transaction' in the phrase 'an excise tax on a transaction' to refer to the act of the Commission in assessing the excise tax. A transaction giving rise to a tax is ordinarily an act external to the taxing authority. But under the Commission's definition, the transaction giving rise to the tax is the very act of assessing that tax. A tax on a tax is the fabled ultimate dream of a taxing authority, but we know (or hope we know) that this is a fable." *Id.* at 756. "Second, a fundamental characteristic of a typical excise tax is that

---

[6] Doc. 11 at 10 (arguing that "the transaction related to the [SRP] occurs when the taxpayer becomes liable for its payment").

it is a discrete, one-time tax based on a single act by the person or entity taxed, such as a sale or an application for a license." *Id.*  The Ninth Circuit concluded that, for purposes of Arizona's unemployment scheme, the transaction is "the act of employing a worker without carrying the required insurance when the worker is injured" and the date of the transaction is "the date on which the worker is injured." *Id.* at 757.  In so concluding, the court recognized that there had to be an opportunity for the employer to avoid the tax because otherwise "the employer is faced with an excise tax that is assessed into the indefinite future regardless of what the employer does." *Id.* at 756.  Notably, the debtors in *DeRoche* had also argued that the relevant "transactions" should be tethered to the actions of the ICA, but the court rejected these arguments, reasoning that "[n]one of these transactions is an act (or failure to act) by the tax-payer." *Id.* at 757.

The broader context of *DeRoche* demonstrates that it was hiring, in addition to inaction, followed by an injury, that created a "transaction" for purposes of § 507(a)(8)(E). *Accord In re Miller*, 634 B.R. 641, 645 (Bankr. M.D. Ga. 2021) (rejecting IRS's reliance on *DeRoche* for similar reasons and concluding that "[b]ecause the SRP is levied on 'taxpayers' choice not to purchase healthcare' and not the taxpayer's use of the healthcare system, there is no affirmative action that can qualify as a transaction").  Further, as noted in *Camilli*, the statute in *DeRoche* imposed liability based on hiring (an act by the taxpayer) whereas the statute in *George* did not.  Here, similar to *George*, where the California law at issue imposed liquidated damages (but did not allow liability based on hiring or an employee injury), the relevant provision of the ACA contemplated no mechanism to impose liability other than a failure to obtain insurance.  Because there is no "transaction" to anchor the excise tax, the IRS's claim is not entitled to priority under § 507(a)(8)(E).  Other courts have reached the same conclusion.  *Chesteen*, 799 F. App'x at 241 ("The Government does not dispute that some type of activity is required; it instead insists the relevant activity is the 'taxpayer's exercise of his or her right to choose not to purchase health insurance.'  But, even assuming *arguendo* that Chesteen made that choice (a proposition for which there is no record evidence), such failure to act would not have been

activity but inactivity."); *Szczyporski*, 34 F.4th at 189 n.5 ("[T]he failure to purchase healthcare is not a 'transaction.'").[7]

III.   Tax On Or Measured By Income Under § 507(a)(8)(A)

The bankruptcy court also held that the SRP is not a tax "on or measured by income or gross receipts" because "a taxpayer's income is not always necessary to determine the SRP to be paid by that individual, and thus cannot be called an income tax under § 507(a)(8)(A)." (Doc. 11-1 at 19-20, citing *Juntoff*, 2021 WL 1522206 at *4.)

On appeal, the IRS contends that the phrase "on or measured by income" in § 507(a)(8)(A) is broader than the traditional test for an income tax. (Doc. 11 at 13.) Given that the SRP "is a tax calculated on the taxpayer's taxable income" and is not imposed against individuals whose income "fails to meet the minimum filing threshold," the IRS argues that the "condition for triggering the [SRP] is that *the taxpayer's income fall within a certain range*." (*Id.*) Thus, the IRS contends that the bankruptcy court erred in analyzing whether the SRP is an "income tax" as opposed to a tax "measured by income." (*Id.* at 14.)

Brown, in response, relies on the bankruptcy court's decision in *Juntoff* to argue that the SRP is not "measured by income" because income is only one of many factors that go into determining the SRP and it is possible to calculate the SRP without using income. (Doc. 12 at 14-15.) Further, Brown argues that "[u]sing income level and an uninsured status to determine if the [SRP] is applicable does not make it an assessment on or measured by income." (*Id.* at 15.)

In reply, the IRS notes that the Sixth Circuit BAP reversed the bankruptcy court's decision in *Juntoff* and held that the SRP is a tax on or measured by income. (Doc. 13 at 2.) The IRS concludes that "there is no way to calculate the [SRP] and/or whether a taxpayer is obligated to pay it without measuring the taxpayer's income at the outset," thus making the SRP a tax measured by income. (*Id.* at 8-10.)

Recognizing that the issue presents a close call, the Court agrees with the Sixth

---

[7]   In *Alicea*, the Fourth Circuit concluded that it was "unnecessary for us to consider whether the SRP . . . amounts to an excise tax" in light of the court's ruling in favor of the government on other grounds. 58 F.4th at 165.

- 16 -

Circuit BAP in *Juntoff*, the Third Circuit in *Szczyporski*, and the Fourth Circuit in *Alicea* that the SRP qualifies as a tax "on or measured by income" under § 507(a)(8)(A).[8] Because this is a question of statutory interpretation, the Court again begins with the relevant statutory text. *Hanousek*, 176 F.3d at 1120. Under 11 U.S.C. § 507(a)(8)(A), another category of expenses and claims that has priority is:

> [U]nsecured claims of governmental units, only to the extent that such claims are for . . . a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . .

Based on this language alone, it is clear that a "tax on or measured by income or gross receipts" must be broader than an "income tax." "On or measured by" suggests that the reason for the *imposition* of the tax need not have anything to do with the taxpayer's income level (*i.e.*, a tax "on" income")—instead, so long as the taxpayer's income level provides one of the considerations for calculating the *amount* of tax owed (*i.e.*, a tax "measured by" income), the conjunctive text is satisfied. Indeed, to "measure" generally means "to ascertain the extent, dimensions, quantity, [or] capacity" of something. *Measure*, Dictionary.com, https://www.dictionary.com/browse/measure. *See also Corning Inc. v. SRU Biosystems, LLC*, 2004 WL 1553575, *6 (D. Del. 2004) (resolving parties' dispute over "the ordinary definition of the word 'measure'" and concluding that the ordinary meaning is "to compute, estimate, or ascertain the extent, quantity, dimensions, or capacity of; . . . to take the dimensions of") (citations omitted).[9] Therefore, to be "measured by" income, the calculation of the amount of tax owed simply must include some consideration of the taxpayer's income.

---

[8] In *Chesteen*, the Fifth Circuit concluded that the government had waived any reliance on § 507(a)(8)(A) and therefore declined to reach whether the SRP could be considered a tax on or measured by income. 799 F. App'x at 242-43.

[9] Of course, courts should "look to dictionary definitions published at the time that the statute was enacted." *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1243 (Fed. Cir. 2010). *See also Dep't of Human Servs., Div. of Vocational Rehabilitation, Hoopono-Services for the Blind v. U.S. Dep't of Educ., Rehabilitation Servs. Admin.*, 46 F.4th 1148, 1155 (9th Cir. 2022) ("[W]e next consult common dictionary definitions to divine the ordinary, contemporary, common meaning at the time the statute was enacted.") (citations omitted). But here, there is no indication (and the parties do not suggest) that the ordinary meaning of the term "measure" has changed between now and when the operative version of § 507(a)(8)(A) was enacted.

The since-rescinded portions of the ACA at issue here require such consideration. Under those provisions, the amount of the SRP is calculated as the lesser of the following options:

> (A) the sum of the *monthly penalty amounts* determined under paragraph (2) for months in the taxable year during which 1 or more such failures occurred, or
>
> (B) an amount equal to the national average premium for qualified health plans which have a bronze level of coverage, provide coverage for the applicable family size involved, and are offered through Exchanges for plan years beginning in the calendar year with or within which the taxable year ends.

26 U.S.C. § 5000A(c)(1) (2017) (emphasis added). Key to the analysis here is the calculation of the monthly payment amount. The monthly payment amount equals one-twelfth of the "greater" of two calculations. *Id.* § 5000A(c)(2). Option 1 is a flat rate set by Congress; Option 2 is a percentage of the "excess of the taxpayer's household income for the taxable year over the amount of gross income specified in § 6102(a)(1) [persons required to make returns on income] with respect to the taxpayer for the taxable year," and that percentage varies depending on the year. *Id.* § 5000A(c)(2)(A)-(B). Thus, to correctly determine the amount of the SRP, the taxpayer's income must be considered. *NFIB*, 567 U.S. at 563 ("For taxpayers who do owe the payment, its amount is determined by such familiar factors as taxable income, number of dependents, and joint filing status."). Admittedly, the alternatives in the statute do create situations where the taxpayer's income is not directly part of the calculation of the final payment amount—for example, where the national average premium amount is less than the calculated monthly penalty amount, or the flat-rate calculation is greater than the income percentage. Nevertheless, the correct determination of the SRP amount must account for the taxpayer's income, even if it does not ultimately dictate the final payment amount. It follows that the SRP is a tax "on or measured by income" and is thus entitled to priority under § 507(a)(8)(A). *Accord Alicea*, 58 F.4th at 165-66 ("[T]he bankruptcy statute gives priority to claims for taxes *measured by* income, not to claims for taxes *triggered by* a particular income level. Even if income has nothing to do with triggering *liability* for the SRP, the *amount owed* for the SRP is

measured by income. . . . That some taxpayers are not required to pay the SRP does not change the fact that when the SRP must be paid, the amount to be paid is measured by the taxpayer's income."); *Szczyporski*, 34 F.4th at 188-89 (concluding that the SRP "fits comfortably" as a tax measured by income because "the payer's household income played an essential role in determining the amount of the [SRP] owed"); *Juntoff*, 636 B.R. at 885 ("[W]hile a taxpayer may be obligated to pay a flat amount rather than a percentage of their income, making that determination requires a taxpayer to input their income into a calculation.").

The Court also agrees with the Sixth Circuit BAP's conclusion in *Juntoff* that this conclusion does not run afoul of *Howard Delivery*'s directive (which Brown heavily emphasizes throughout his brief) to tightly construe the priorities in the Bankruptcy Code. Even when applying the requisite tight construction, the SRP remains a tax measured by income. *Juntoff*, 636 B.R. at 885 ("Section 507(a)(8)(A) does not require that the tax be calculated *solely* or *primarily* by measuring income. While the Panel recognizes that *Howard Delivery* requires that we 'tightly construe' the priority classes, we reject the contention that Congress intended the phrase 'measured by income' to require that a tax must be "measured by income *only*' to fit in § 507(a)(8)(A).") (citations omitted).

Finally, although the bankruptcy court correctly noted that SRPs are characterized as "Miscellaneous Excise Taxes" rather than "Income Taxes" under the Internal Revenue Code (Doc. 11-1 at 23), the Court is unpersuaded that this characterization changes the analysis. As discussed above, the question is not whether the SRP is a tax "on" income but whether it is a tax "measured by" income. *Szczyporski*, 34 F.4th at 189 ("That the shared responsibility payment provision is located in a portion of the Internal Revenue Code titled 'Miscellaneous Excise Taxes' does not alter our conclusion that the payment is measured by income. Titles within the Internal Revenue Code have no legal effect.") (internal citations omitted). An excise tax can be measured by income, even if it is not a tax on income.

…

Accordingly,

**IT IS ORDERED** the judgment of the bankruptcy court is reversed.  This action is remanded to the bankruptcy court for proceedings consistent with this decision.

**IT IS FURTHER ORDERED** that the Clerk of Court terminate this action.

Dated this 27th day of February, 2023.

Dominic W. Lanza
United States District Judge